**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 24-1380**

———————

ROBERT FRAZIER; ANIBAL HERNANDEZ; D.P., a minor, by and through his next friend and guardian K.P.; CHRISTOPHER BUTLER; MIRAMBA WILLIAMS; DONNELL DAVIS; LESLIE SHARP; ELMER LAGUAN-SALINAS; ADRIENNE WORTHINGTON, individually and on behalf of a class of similarly situated persons,

        Plaintiffs – Appellants,

v.

PRINCE GEORGE'S COUNTY, MARYLAND; CORENNE LABBÉ, in her official capacity as Director of the Prince George's County Department of Corrections; JEFFREY LOGAN, in his official capacity as Division Chief of the Prince George's County Population Management Division; KENNETH GRAY, in his official capacity as Section Chief of the Prince George's County Community Supervision Section; TANYA LAW, in her official capacity as Unit Chief of the Prince George's County Monitoring Services Unit; LAKEECIA ALLEN; BRYON BEREANO; JOHN BIELEC; SCOTT CARRINGTON; ADA CLARK-EDWARDS; STACEY COBB SMITH; BRIAN DENTON; ROBERT HEFFRON, JR.; DONNAKA LEWIS; OFFICER GREGORY POWELL; CATHY SERRETTE, in their personal capacities and official capacities as District and Circuit Court Judges for the District and Circuit Courts of Maryland for Prince George's County,

        Defendants – Appellees.

———————

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Peter J. Messitte, Senior District Judge. (8:22-cv-01768-PJM)

———————

Argued: May 6, 2025                      Decided: June 18, 2025

———————

Before RICHARDSON and HEYTENS, Circuit Judges, and FLOYD, Senior Circuit Judge.

———————————————

Vacated in part, reversed in part, and remanded with instructions by published opinion. Judge Heytens wrote the opinion, which Judge Richardson and Judge Floyd joined.

———————————————

**ARGUED:** Elizabeth Cruikshank, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellants. Andrew Jensen Murray, PRINCE GEORGE'S COUNTY OFFICE OF LAW, Largo, Maryland; Kevin Michael Cox, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees. **ON BRIEF:** Jeremy D. Cutting, Sumayya Saleh, Jeffrey D. Stein, CIVIL RIGHTS CORPS, Washington, D.C.; Mary B. McCord, William Powell, Seth Wayne, Institute for Constitutional Advocacy and Protection, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C.; Howard M. Shapiro, Matthew T. Martens, Sonika Data, Britany Riley-Swanbeck, Washington, D.C., Robert L. Boone, WILMER CUTLER PICKERING HALE AND DORR LLP, New York, New York, for Appellants. Rhonda L. Weaver, County Attorney, Shelley L. Johnson, Deputy County Attorney, PRINCE GEORGE'S COUNTY OFFICE OF LAW, Largo, Maryland, for Appellee Prince George's County, Maryland. Anthony G. Brown, Attorney General, James O. Spiker IV, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees Lakeecia Renee Allen, Bryon Bereano, John Bielec, Scott Carrington, Ada E. Clark-Edwards, Stacey Cobb Smith, Brian Denton, Robert Heffron, Jr., Donnaka Lewis, Gregory Powell, and Cathy Serrette.

———————————————

2

TOBY HEYTENS, Circuit Judge:

Asserting that their detentions—and the policies that led to them—were unconstitutional, a group of current and former pretrial detainees brought a putative class action against a county and 11 state court judges in federal district court. The district court granted judgment on the pleadings, concluding that both the judges and the county had absolute immunity from the plaintiffs' claims for damages and an injunction and that a declaratory judgment could not provide any meaningful relief.

We vacate in part, reverse in part, and remand for further proceedings. The district court properly dismissed the judicial defendants but should have done so for lack of subject matter jurisdiction and without prejudice. The district court erred in dismissing the plaintiffs' claims against the county because the Supreme Court and this one have repeatedly held that municipalities may not assert any immunity defenses in actions brought under 42 U.S.C. § 1983. Finally, the district court erred in dismissing seven plaintiffs who had already been released from pretrial detention at the time of the district court's ruling for lack of available relief because all seven have, at minimum, live claims for damages.

I.

Prince George's County, Maryland, uses a two-step process for deciding whether and under what conditions a person will be detained pending trial. At "phase one," an arrestee makes "an initial appearance" before a magistrate, who makes a "preliminary" determination about the person's "pretrial-release status." *Frazier v. Prince George's Cnty.*, 86 F.4th 537, 541 (4th Cir. 2023). "[I]f the arrestee is not immediately released, we

3

move on to phase two: a bail-review hearing before a county judge." *Id.*

This case involves only phase two. As we noted in an earlier opinion, how phase two plays out in the County "remains unclear." *Frazier*, 86 F.4th at 541. The complaint alleges that in many situations (and about 27% of bail review hearings between January and May 2022), judges within the County refer the matter to the Pretrial Division of the County's Department of Corrections with an order stating that the person is "held without bond with a pretrial option" or something similar. JA 31. Once such a referral happens, the complaint asserts that "[t]he Pretrial Division . . . processes the file and determines, in its sole discretion, whether, when, and on what conditions to release the person" under its supervision. JA 32. If the Pretrial Division decides against supervised release, the person remains detained pending trial. The complaint alleges that this process can take "weeks or months," that the County's pretrial release criteria are "arbitrary," and that the Pretrial Division often fails to give the detained person any reasons for its decision. JA 23, 59.

The plaintiffs are nine people in whose cases the judge entered the sort of order described above. Claiming that what happened to them violated the substantive and procedural components of the Due Process Clause (as well as various provisions of the Maryland Constitution), the plaintiffs filed a putative class action against the County and 11 state court judges.[1] The complaint seeks a declaratory judgment, injunctive relief, and compensatory damages.

---

[1] The complaint also named four County employees, but the district court dismissed them in a pretrial ruling that the plaintiffs do not challenge here.

4

This is the second time this case has been before us. During the first round of proceedings, the district court denied the plaintiffs' motion for a preliminary injunction "without stating its factual findings and legal conclusions." *Frazier*, 86 F.4th at 541. We vacated that order for failure to comply with Federal Rule of Civil Procedure 52(a)(2), and remanded for further proceedings. See *id.* at 546.

On remand, the district court again denied the plaintiffs' motion for a preliminary injunction, and litigation continued in the district court. During discovery, the plaintiffs noticed depositions for two of the judicial defendants, who in turn filed a joint motion to quash. The same day, all 11 judicial defendants filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), as did the County.

The district court granted both the motion to quash and the motions for judgment on the pleadings. The court concluded that the judges had absolute immunity from any suit for damages or injunctive relief and that the County was also protected from those claims by "quasi-judicial immunity." JA 1201, 1531. The court further concluded that there was "no discernible basis on which a declaratory decree against Defendants could be fashioned" given their immunities from other forms of relief and the "serious questions of federal-state relations [that] would arise if a federal court were to take over the restructuring and subsequent monitoring of how state Judges and their affiliates engage in pretrial release decisionmaking." JA 1532.

The plaintiffs appealed again. We review the district court's grant of judgment on the pleadings de novo. See *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014).

5

II.

We agree with the district court's dismissal of the judicial defendants but for a different reason. The district court entered a "[f]inal judgment . . . in favor of" the judicial defendants based on absolute judicial immunity. JA 1538. In contrast, we conclude the district court should have dismissed those claims for lack of subject matter jurisdiction because the plaintiffs and the judicial defendants are not "adverse" as required by Article III of the United States Constitution.[2] And because a court that lacks jurisdiction has no "authority" to issue a ruling "on the merits," *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999), we vacate and remand with instructions to state that the dismissal of the plaintiffs' claims against the judicial defendants is based on lack of jurisdiction and is without prejudice, see *T.M. v. University of Md. Med. Sys.*, No. 24-1707, 2025 WL 1571823, at *8 (4th Cir. June 4, 2025).

A.

"The jurisdiction of federal courts is defined and limited by Article III of the Constitution." *Flast v. Cohen*, 392 U.S. 83, 94 (1968). By using the "words 'cases' and 'controversies,'" Article III "limit[s] the business of federal courts to questions presented in an adversary context." *Id.* at 95 (quoting U.S. Const. art. III, § 2). We must therefore consider whether the plaintiffs and the judicial defendants are "adverse litigants," *Muskrat*

---

[2] Although the defendants did not raise this issue in their response brief, Article III justiciability issues "cannot be waived or forfeited." *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662–63 (2019). Instead, we have an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

*v. United States*, 219 U.S. 346, 361 (1911), before reaching any judicial immunity questions, see *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1998) (holding that federal courts must decide jurisdictional questions—including justiciability—before reaching any merits questions); see also *Nevada v. Hicks*, 533 U.S. 353, 373 (2001) ("There is no authority whatever for the proposition that absolute- and qualified-immunity defenses pertain to the court's jurisdiction.").

In *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021), the Supreme Court considered whether the plaintiffs there could "seek an order enjoining all state-court clerks from docketing [certain] cases and all state-court judges from hearing them." *Id.* at 39. After first determining that the Court lacked jurisdiction over the claims against the judges because of sovereign immunity, the Court further concluded that the plaintiffs, the clerks, and the judges were not "adverse litigants" under Article III. *Id.* at 39–40 (quotation marks removed). The Court explained that "[j]udges exist to resolve controversies about a law's meaning or its conformance to the Federal and State Constitutions, not to wage battle as contestants in the parties' litigation." *Id.* at 40.

Interpreting *Whole Woman's Health*, we agree with two of our sister circuits that Article III's "requirement of a justiciable controversy is not satisfied where a judge acts in [their] *adjudicatory* capacity" rather than as an "enforcer or administrator." *Reule v. Jackson*, 114 F.4th 360, 365 (5th Cir. 2024) (quotation marks removed); see also *Lindke v. Tomlinson*, 31 F.4th 487, 492–93 (6th Cir. 2022). We also agree that a judge's role is "adjudicative" when the judge "act[s] as they would in any other case" by "finding facts and determining law in a neutral and impartial judicial fashion." *Id.* at 493 (quotation marks

7

removed).

Applying those rules here, we conclude that there is no justiciable controversy between the plaintiffs and the judicial defendants. When a judge says a person may be released only if the Pretrial Division agrees to supervise them, the judge is adjudicating that person's request for bail. The judge "does not initiate the underlying action" as an "enforcer" would and "is not responsible for [the bail decision's] enforcement," *Lindke*, 31 F.4th at 493. Instead, the judge "evaluates the [person's] request" for bail, *id.*, considers prescribed criteria, see Md. R. 4-216.1(f), and decides who should be immediately released, who should be detained, and who should be released only if appropriate supervision is available. Those are "function[s] normally performed by a judge" and thus do not create an Article III case or controversy between judges and the litigants before them. *Reule*, 114 F.4th at 366 (quotation marks removed); see *id.* (concluding that judges act in an adjudicatory capacity when "evaluat[ing] vexatious litigants' requests for permission to file a new lawsuit").

The conclusion that there is no justiciable controversy between the plaintiffs and the judicial defendants does not leave the plaintiffs without a remedy against potentially unlawful judicial conduct. When a party believes that a judge has violated their rights while acting in an adjudicative capacity, "the traditional remedy has been some form of appeal" rather than a lawsuit against the judge. *Whole Woman's Health*, 595 U.S. at 39. And although the plaintiffs insist that a traditional appeal is often unavailable in their situation, they concede that Maryland law would permit them to challenge their pretrial detentions as unlawful by seeking a writ of habeas corpus. See Oral Arg. 11:10–:24; see also Md. R.

8

15-302. If a particular plaintiff believes that a particular state court judge erred in concluding that supervision was necessary for their release or failed to sufficiently justify that determination, habeas is the appropriate forum for seeking relief. Cf. *Reule*, 114 F.4th at 366 ("[A]lthough the [judge's] decision cannot be directly appealed, the litigant may apply for a writ of mandamus to obtain review of the [judge's] ruling." (quotation marks removed)).[3]

B.

The plaintiffs offer two counterarguments. Neither persuades us.

1.

The plaintiffs insist they are not challenging their own detentions, but rather the existence of the entire pretrial referral process, and that they are thus adverse to the judicial defendants because the judges are the ones who adopted "the overall scheme of deferring decisionmaking altogether to the County." Oral Arg. 9:23–:30. That argument suffers from multiple defects.

For one thing, the plaintiffs' characterization of their suit on appeal is a poor fit with their complaint. The complaint seeks a declaration that the "Defendants" (including the judges) "violate Plaintiffs' rights . . . by detaining people pretrial" and an injunction

---

[3] Contrary to the plaintiffs' suggestion, there is no conflict between this conclusion and the fact that the federal statute under which they sued (42 U.S.C. § 1983) does not require exhaustion of state remedies. See *Patsy v. Board of Regents of State of Fla.*, 457 U.S. 496, 516 (1982). The question we address here is not whether Section 1983 provides the plaintiffs with a cause of action—it is whether Article III of the United States Constitution permits them to sue the judicial defendants in the first place.

9

"requiring" the since-dismissed County official defendants "to promptly release all persons who have been given a pretrial referral and who have not received the due process necessary to justify their ongoing detention." JA 68. Nor does the complaint identify a "wholesale handing over [of the judges'] adjudicatory authority." Oral Arg. 10:56–11:02. To the contrary, the complaint alleges that, during a five-month period, less than one-third of all County arrestees were referred to the Pretrial Division.

To the extent that the plaintiffs are challenging a freestanding "policy" instead of their own individual detentions, Frazier Supp. Br. 7, that just creates another Article III case-or-controversy problem: standing. To have standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 598 (2007). "[S]tanding is not dispensed in gross." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Instead, "plaintiffs must demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek." *Murthy v. Missouri*, 603 U.S. 43, 44 (2024) (quotation marks removed). Applying those principles here, we conclude that the allegedly unconstitutional policy that the plaintiffs have identified does not give them standing to seek forward-looking relief against the judicial defendants.

We start with "the first and foremost of standing's three elements": injury in fact. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (alterations and quotation marks removed). The plaintiffs challenge the judicial defendants' "general policy" of referring pretrial detention decisions to an improper decision-maker (the County) rather than making

10

the decision themselves. Frazier Supp. Br. 7. But "a citizen does not have standing to challenge a government regulation simply because the plaintiff believes that the government is acting illegally." *Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 381 (2024). Such an "abstract . . . injury to the interest in seeing that the law is obeyed" lacks "the concrete specificity" that Article III requires. *Federal Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998).

To be sure, the plaintiffs might respond that they were unlawfully detained, which is an Article III injury in fact. But that just recreates the Article III adversity problems discussed above while flagging new redressability problems as well. As the plaintiffs emphasize, the only relief they seek against the judicial defendants is a declaratory judgment stating that the judges' current procedures for "detaining people pretrial" violate "Plaintiffs' rights" under the Federal and Maryland Constitutions. JA 68. But "Article III grants federal courts the power to redress *harms* that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *TransUnion LLC*, 594 U.S. at 427 (quotation marks removed) (emphasis added). In addition, this Court has held that "a declaratory judgment *cannot*"—"[b]y itself"—"be the redress that satisfies the third standing prong" without "some further concrete relief that will likely result from the declaratory judgment." *Comite de Apoyo a los Trabajadores Agricolas v. United States Dep't of Lab.*, 995 F.2d 510, 513 (4th Cir. 1993) (emphasis added). Thus, even if we accept the plaintiffs' assertion that they are challenging the "overall scheme" of pretrial release decisionmaking rather than their own detentions, Oral Arg. 9:23–:30, the district court would still lack subject matter jurisdiction over their claims against the

11

judicial defendants.

2.

The plaintiffs also insist that the Article III adversity rules discussed above apply only to those who "challenge the constitutionality of a statute" and that they are not challenging the constitutionality of any statute here. Frazier Supp. Br. 6. Even if we accept the plaintiffs' framing of their own claims, we do not understand the adversity doctrine to be so limited.

The centerpiece of the plaintiffs' argument is the Supreme Court's statement in *Whole Woman's Health* that "'no case or controversy' exists 'between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute.'" 595 U.S. at 40 (quoting *Pulliam v. Allen*, 466 U.S. 522, 538 n.18 (1984)). But we do not parse judicial opinions as if they were statutes, see, *e.g.*, *Hicks*, 533 U.S. at 372, and just because there is no Article III case or controversy in one situation does not mean there is an Article III case or controversy in every other situation. The plaintiffs identify no authority—from the Supreme Court, this Court, or any other—saying that there *is* Article III adversity in the situation we confront here.

For example, the decision that *Whole Woman's Health* was quoting says no such thing. In *Pulliam*, the Court considered an appeal from a judge who claimed that an "award of attorney's fees against her should have been barred by principles of judicial immunity." 466 U.S. at 525. The Court held that because judges had no common law immunity from claims for injunctive relief, 42 U.S.C. § 1988 allowed an award of attorney's fees after the plaintiff obtained an injunction against a judge's unlawful practice "of imposing bail on

12

persons arrested for nonjailable offenses." *Pulliam*, 466 U.S. at 524–25. The plaintiffs assert that, because the federal district court had subject matter jurisdiction in *Pulliam*, the same must be true here.

The problem with that argument is that the plaintiffs in *Whole Woman's Health* tried the same move, and the Supreme Court rejected it. As *Whole Woman's Health* explained, the *Pulliam* Court "faced *only* the question [of] whether the suit before it could proceed against a judge consistent with the distinct doctrine of judicial immunity"—not whether Article III permitted the original suit. 595 U.S. at 42 (emphasis added). Indeed, because the judge "did not appeal the award of injunctive relief against her," the *Pulliam* Court went out of its way to "express no opinion as to the propriety of the injunctive relief awarded in th[at] case." 466 U.S. at 542; see *id.* at 538 n.18 (noting that "Article III . . . imposes limitations on the availability of injunctive relief against a judge"). *Pulliam* thus does not answer the jurisdictional questions we confront here.

The plaintiffs also suggest they are suing the judicial defendants for enforcement decisions, not adjudicative ones. They note that *Whole Woman's Health* distinguished *Pulliam* in part because in *Pulliam* "the plaintiff sought an injunction only to prevent the judge from enforcing a rule of her own creation." 595 U.S. at 42. The plaintiffs argue that this case presents the same situation because the judicial defendants "enforce" pretrial referrals that are also a rule of their own creation. Frazier Supp. Br. 6 (alterations and quotation marks removed). We disagree.

This case is a far cry from those where courts have concluded that a judicial defendant was acting in an enforcement capacity. In *Supreme Court of Virginia v.*

*Consumers Union of the United States, Inc.*, 446 U.S. 719 (1980), for example, the Supreme Court held that Virginia's highest court and its chief justice were proper defendants in an action challenging the "enforcement" of the Commonwealth's "disciplinary rules governing the conduct of attorneys" because they had "independent authority . . . to *initiate*" such disciplinary "proceedings." *Id.* at 721, 736 (emphasis added). This Court's recent decision in *Gibson v. Goldston*, 85 F.4th 218 (4th Cir. 2023), is no closer to the facts here. There, we held that "a judge who participate[d] in the search of a litigant's home" could be sued because the judge was acting "as part of the law enforcement team" rather than as a judicial officer. *Id.* at 220, 225. In those cases, the judges were sued for initiating and investigating proceedings rather than actions taken while presiding over other parties' disputes.

In contrast, "no case or controversy exists" here for the same reason that adversity is lacking when a judge "adjudicates claims under a statute and a litigant . . . attacks the constitutionality of the statute." *Whole Woman's Health*, 595 U.S. at 40 (quotation marks removed). Here, as there, the judicial defendants "have not initiated [any] enforcement" proceedings, but "adjudicate the merits of the suit that" others "may bring." *In re Justs. of Supreme Ct. of P.R.*, 695 F.2d 17, 21, 22 (1st Cir. 1982). And here, as there, the judicial defendants' decisions are properly reviewed through "some form of appeal," rather than "an injunction against a state court or its machinery." *Whole Woman's Health*, 595 U.S. at 39 (quotation marks removed). For those reasons, the district court was correct to dismiss the plaintiffs' claims against the judicial defendants but should have done so for lack of subject matter jurisdiction and thus without prejudice.

14

III.

We reverse the district court's dismissal of the plaintiffs' claims against the County and remand for further proceedings consistent with this opinion.

The district court identified only one basis for dismissing the County as a defendant: that it was protected by a form of "quasi-judicial immunity" that was "coextensive" with the immunity that the judicial defendants themselves enjoy. The plaintiffs assert that the County—as a municipality—cannot assert immunities of any kind. Reviewing that issue de novo, see *Goldstein v. Moatz*, 364 F.3d 205, 211 (4th Cir. 2004), we agree with the plaintiffs.

The Supreme Court has repeatedly stated that, "unlike various government officials, municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983." *Leatherman v. Tarrant Cnty. Narcotics Intel. and Coordination Unit*, 507 U.S. 163, 166 (1993); accord *Owen v. City of Indep.*, 445 U.S. 622, 638 (1980) ("[T]here is no tradition of immunity for municipal corporations."). That should have been the end of the matter.

The County gamely responds that it enjoys "quasi-judicial immunity" here because, "like a Judge's subordinate, the County's Pretrial Services Division effectuates [a] Judge's orders by evaluating . . . criminal defendant[s] for eligibility" for pretrial release. County Br. 6. In so arguing, the County evokes the Supreme Court's statements that those "who perform official functions in the judicial process" are protected by absolute immunity, *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983), and that, in deciding whether that immunity applies, courts take "a functional approach" that "looks to the nature of the function

15

performed, not the identity of the actor who performed it," *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).

None of that has anything to do with the issue before us. True, the Supreme Court has adopted a functional approach to defining "the scope of immunity for state officials." *Buckley*, 509 U.S. at 267. But the Supreme Court and this Court have made clear that "the defenses available to an official in a personal capacity action simply are *unavailable* in a suit against a governmental entity." *Berkley v. Common Council of City of Charleston*, 63 F.3d 295, 301 (4th Cir. 1995) (en banc) (emphasis added). Instead, the Supreme Court has "cabined" municipal liability in a different way: by rejecting respondeat superior liability and holding that a municipality may be held liable under 42 U.S.C. § 1983 only "if it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights." *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). The district court erred in concluding that the County was eligible for any form of immunity—quasi-judicial or otherwise.

The County asserts that the plaintiffs' claims against it fail for other reasons and invites us to affirm the district court's grant of judgment on the pleadings on alternative grounds. But the district court did not consider any of these issues, nor do they necessarily implicate subject matter jurisdiction. "[M]indful that we are a court of review, not of first view," we leave any such questions—including whether the plaintiffs have identified a relevant custom or policy that creates liability for the County—for the district court to address in the first instance. *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005).

16

IV.

We briefly address two issues that stem from our conclusion that the district court was right to dismiss the plaintiffs' claims against the judicial defendants but wrong to dismiss their claims against the County.

A.

The district court erred in dismissing seven of the nine plaintiffs at an earlier stage of this litigation.[4] The court dismissed all plaintiffs who were not in pretrial detention at the time of the court's January 24, 2023, order, reasoning that they would not benefit from any available remedy. That was error. Release from custody does not affect a plaintiff's ability to seek damages for unlawful confinement. And because the district court erred in concluding that the County was entitled to quasi-judicial immunity, see *supra* Part III, all nine plaintiffs retain live claims for damages against the County regardless of when they were released. See *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016) ("A case becomes moot . . . only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." (quotation marks removed)).[5]

---

[4] Despite being our second opinion, this is our first chance to address the dismissal of the seven plaintiffs. The earlier appeal was from the district court's denial of a preliminary injunction and was thus "interlocutory" and limited in scope. See *Frazier*, 86 F.4th at 543; see also *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 48 (1995) (counseling "resistance to expansion of appellate jurisdiction" over issues not implicated in interlocutory appeals). In contrast, this appeal is from a final decision, and thus permits review of all rulings of the district court that are still live and could not previously have been reviewed. See *Gowen v. Winfield*, 130 F.4th 162, 172 (4th Cir. 2025).

[5] It appears the district court also erred in dismissing three of the seven named plaintiffs' claims for equitable relief. When the complaint was filed and class certification (Continued)

17

B.

We decline the plaintiffs' invitation to decide whether the district court abused its discretion in granting the motion to quash filed by two judges who we have held must be dismissed as defendants. See *In re Grand Jury, John Doe No. G.J.2005-2*, 478 F.3d 581, 584 (4th Cir. 2007) ("We review the grant of a motion to quash . . . for abuse of discretion."). To be sure, the plaintiffs still have live claims against the County, and plaintiffs may generally seek discovery from any person with relevant information, whether they are a party to the litigation or not. See *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30 & n.16 (1984). But the standards for obtaining discoverable information become "more demanding" when applied to "nonparties," *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), and neither the parties nor the district court has had a chance to address how those standards would apply to the two subpoenaed judges now that they will no longer be defendants. The plaintiffs also have not stated whether they would still seek to depose those judges absent any claims against them, nor have they been given an opportunity to articulate what relevance discovery from the judges would have to their claims against the County. We thus leave any such questions for the district court to

was sought, plaintiffs D.P., Frazier, and Hernandez were all in pretrial detention. D.P., Frazier, and Hernandez thus had Article III standing to seek equitable relief, see *County of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991), and those claims have not been rendered moot just because "they've been released or tried since they filed their complaint," *Frazier*, 86 F.4th at 543 n.2; see *Gerstein v. Pugh*, 420 U.S. 103, 110–11 n.11 (1975). In contrast, plaintiffs Davis, Laguan-Salinas, Sharp, and Worthington had already been released when the complaint was filed, and thus do not appear to have standing to seek equitable relief. See *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 404 n.11 (1980). We leave further exploration of these issues to the district court on remand.

18

address, if necessary, on remand.

*     *     *

The judgment is vacated in part and reversed in part. The case is remanded with instructions to dismiss the claims against the state court judges without prejudice for lack of subject matter jurisdiction and for other proceedings consistent with this opinion.

*SO ORDERED*